Judgment rendered May 15, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,900-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ENERGY PARTNERS, LP AND
ETC TEXAS PIPELINE, LTD

Plaintiffs-Appellants

versus

NEW GENERATION GAS
GATHERING LLC

Defendant-Appellee

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 84,356
Honorable Amy Burford McCartney, Judge

* * * * *

BRADLEY MURCHISON
KELLY & SHEA LLC
By: Kay Cowden Medlin
    Leland G. Horton
    Joshua Steven Chevallier

Counsel for Appellants,
Energy Transfer, LP
ETC Texas Pipeline, LTD
Gulf Run Transmission, LLC
Enable Midstream Partners, LP
ETC Tiger Pipeline, LLC

GIBSON, DUNN & CRUTCHER LLP
By: Trey Cox
    Robert C. Walters
    Scott Hvidt
    Elizabeth P. Papez

FAIRCLOTH MELTON
SOBEL & BASH, LLC
By: Jimmy Roy Faircloth, Jr.
    Barbara Bell Melton

Counsel for Appellee,
New Generation Gas
Gathering LLC

BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC
By: Adam Bennett Zuckerman

CRAVATH, SWAINE & MOORE LLP
By: Antony L. Ryan
    Kevin J. Orsini
    Michael P. Addis
    David H. Korn


* * * * *


Before STEPHENS, HUNTER, and ELLENDER, JJ.

**STEPHENS, J.**

Plaintiffs, Energy Transfer LP, ETC Texas Pipeline, LTD, Gulf Run Transmission LLC, Enable Midstream Partners LP, and ETC Tiger Pipeline LLC (collectively "ETP"), filed a petition for declaratory judgment against defendant, New Generation Gas Gathering LLC ("NG3"), seeking a declaration by the trial court that NG3 may not, without ETP's prior permission, locate proposed pipeline crossings under ETP's pipelines located on right-of-way servitudes held by ETP. NG3 filed an answer and reconventional demand urging, *inter alia*, that ETP's interpretation and/or use of its servitudes violate Louisiana property law and constitute restraints of trade in violation of Louisiana's Monopolies Act. Both parties filed exceptions and motions, and a hearing was held on the various filings. ETP has appealed from unfavorable interlocutory rulings made by the trial court in this matter. For the reasons set forth below, we affirm the trial court's judgment.

**FACTS AND PROCEDURAL HISTORY**

ETP acquired the following pipeline right-of-way servitudes from Southern Natural Gas Company through various conveyances and acquisitions:

> The Lowry Servitude, located in Section 11, Township 11 North, Range 16 West, DeSoto Parish, Louisiana, recorded on August 2, 1984, in Book 561 on page 501, Entry No. 468739 in the Conveyance Records of DeSoto Parish, Louisiana.
>
> The IP Timberlands Servitude, located in Section 1, Township 11 North, Range 16 West, DeSoto Parish, Louisiana, recorded on January 12, 1987, in Book 603 on page 323, Entry No. 490596 in the Conveyance Records of DeSoto Parish, Louisiana.

The Vardaman Servitude, located in Section 17, Township 12 North, Range 14 West, DeSoto Parish, Louisiana, recorded on March 13, 1989, in Book 634 on page 330, Entry No. 507521 in the Conveyance Records of DeSoto Parish, Louisiana.

The Moorman Servitude, located in Section 28, Township 12 North, Range 15 West, DeSoto Parish, Louisiana, recorded on March 13, 1989, in Book 634 on page 348, Entry No. 507525 in the Conveyance Records of DeSoto Parish, Louisiana.

ETP acquired the following pipeline right-of-way servitudes from Regency Field Services, LLC, through various conveyances and acquisitions:

The Higgs Servitude, located in Section 12, Township 12 North, Range 15 West, DeSoto Parish, Louisiana, recorded on July 23, 2010, in Book 1107 on page 288, Entry No. 684869 in the Conveyance Records of DeSoto Parish, Louisiana.

The Red River Servitude, located in Section 21, Township 12 North, Range 15 West, recorded on June 1, 2011, in Book 1162 on page 397, Entry No. 697096 in the Conveyance Records of DeSoto Parish, Louisiana.

The Munn Servitude, located in Section 28, Township 12 North, Range 15 West, recorded on June 24, 2011, in Book 1166 on page 610, Entry No. 698070 in the Conveyance Records of DeSoto Parish, Louisiana.

In accordance with rights granted by the above pipeline servitudes, ETP and/or its predecessors and affiliates constructed natural gas pipelines on the Southern Natural property and the Regency property. These pipelines form part of what is known as Gulf Run, the largest pipeline for natural gas from the Haynesville Shale to the Louisiana Gulf Coast. Put in service in December 2022, Gulf Run is a 42" pipeline running from the Haynesville Shale in northwestern Louisiana to natural gas hubs further south.

NG3, defendant and plaintiff in reconvention, is a midstream energy company in the business of gathering and redelivering natural gas from the Haynesville Shale region to the Louisiana Gulf Coast. In the works for NG3

2

is an approximately $1.6 billion natural gas gathering project that will collect natural gas produced in the Haynesville Shale area for treatment and redelivery south to the Gillis Hub in Gillis, Louisiana. NG3's planned gathering system will travel across five parishes in Louisiana, from DeSoto Parish southward to Beauregard Parish.

ETP was contacted by representatives of NG3, who shared the information that NG3 planned to install one or more natural gas pipelines which would require the crossing of ETP's pipelines in 106 locations from DeSoto Parish to Beauregard Parish, including approximately 20 crossings in DeSoto Parish. According to ETP, in DeSoto Parish, NG3's proposed pipeline would require multiple crossings of ETP's pipelines on or under the Southern Natural servitudes and the Regency servitudes. ETP took issue with NG3's refusal to provide servitudes or other documentation demonstrating its permission to enter the Southern Natural and Regency properties.

According to NG3, only a minority of its proposed crossings will actually involve Gulf Run; instead, approximately two-thirds of NG3's proposed crossings are crossings of ETP's gathering lines, abandoned lines and/or other small diameter lines. Representatives from NG3 and ETP met several times to discuss the proposed crossings, and emails were exchanged detailing the parties' inability to come to a resolution of the issue.

ETP filed its Petition for Declaratory Judgment on August 31, 2023.[1] NG3 filed its Reconventional Demand, Answer, and Affirmative Defenses

---

[1] ETP filed Amending and Restated Petitions on September 1, 2023, and March 18, 2024.

on November 13, 2023.[2]  ETP filed a Motion to Declare the Louisiana Monopolies Act Inapplicable and to Vacate the September 2024 Trial Setting on January 11, 2024.  ETP filed a Dilatory Exception of Prematurity and Peremptory Exception of No Cause of Action on February 9, 2024.  Also filed by ETP on February 9, 2024, was a Motion to Strike NG3's Counts II-VI (from its Reconventional Demand) under Louisiana Civil Code Article 971.

NG3 filed a Peremptory Exception of No Cause of Action on February 9, 2024.  NG3 filed a Motion to Conduct and Compel Discovery on March 8, 2024; on that same date, ETP filed Responses and Objections to NG3's First Set of Interrogatories, Requests for Productions of Documents and Requests for Admissions.  On March 18, 2024, ETP filed its Opposition to NG3's Peremptory Exception of No Cause of Action, and Opposition to NG3's Motion to Conduct and Compel Discovery.  NG3's Opposition to ETP's Exceptions of Prematurity and No Cause of Action, Opposition to ETP's Motion to Declare the Louisiana Monopolies Act Inapplicable and to Vacate the September 2024 Trial Setting, and Opposition to ETP's Motion to Strike NG3's Counts II-VI Under Louisiana Civil Code Article 971 were also filed on March 18, 2024.

Both parties filed replies in support of their exceptions and motions thereafter, and a hearing was held on the filings on March 25, 2024.  The trial court orally denied all of the parties' motions except NG3's motion to compel discovery.  A written judgment to that effect was signed on April 2, 2024.  Because two of NG3's claims in its Reconventional Demand allege

---

[2] NG3 filed an Amending Reconventional Demand on February 8, 2024.

4

violations of the Louisiana Monopolies Act, the trial court's judgment on the motions and exceptions was immediately appealable pursuant to La. R.S. 51:135. ETP has timely appealed from the trial court's judgment, specifically the trial court's denial of ETP's motions to strike or dismiss (via exceptions) Counts II-VI of NG3's Reconventional Demand, and ETP's motion to vacate the orders allowing discovery and setting the trial date on those claims.

## DISCUSSION

ETP has assigned as error:

- The trial court erred in finding that Louisiana's anti-SLAPP statute "does not apply" to Counts II-VI of NG3's Reconventional Demand.

- The trial court erred in denying ETP's Motion to Strike Counts II-VI as barred by La. C.C.P. art. 971 and the related federal *Noerr-Pennington* doctrine.

- The trial court erred in denying ETP's Motion to Strike Counts II-VI as barred by La. C.C.P. art. 971 or dismissing (on the Exceptions) Counts II-VI on the independent ground that NG3 cannot plead or prove several elements of these claims.

- The trial court erred in denying ETP's Motion to Stay Discovery and Vacate the Trial Date on Counts II-VI based on La. C.C.P. art. 971 and other applicable law.[3]

*Applicable Legal Principles*

Louisiana Revised Statutes 51:135 establishes that every interlocutory order in a case involving the Louisiana Monopolies Act case is appealable and imposes a tight timeline within which the matter must be heard and decided once the appeal is lodged, five and 20 days, respectively. This expedited procedure necessitates that the Court hastily become thoroughly

---

[3] This assignment of error is not briefed, and, as such, will not be addressed by this Court.

familiar with the relevant aspects of the case. *Acadiana Renal Physicians v. Our Lady of Lourdes Regional Medical Center., Inc.*, 23-372, p. 8 (La. App. 3 Cir. 6/28/23), 368 So. 3d 745, 751.

### *Denial of Special Motion to Strike Under La. C.C.P. art. 971*

According to ETP, the competition claims asserted by NG3 in its Reconventional Demand, Counts II-VI, are expressly disallowed by both federal and Louisiana law. First, these claims violate Louisiana's anti-SLAPP statute, La. C.C.P. art. 971, which was enacted to weed out "SLAPP" cases exactly like NG3's reconventional demand—strategic lawsuits against public participation in court cases and other forms of government advocacy. ETP contends that the trial court erred in finding that La. C.C.P. art. 971 was inapplicable to NG3's claims.

ETP next takes issue with the trial court's denial of its special motion to strike, urging that all of NG3's claims "arise from" several acts in furtherance of ETP's right of petition, starting with ETP's petition itself, which is the "express target of Counts II-VI of NG3's Reconventional Demand, which seek[s] to punish and chill ETP's petition rights with treble damages and an injunction enjoining ETP from enforcing its land use contracts in this and future cases." ETP also argues that the *Noerr-Pennington* doctrine[4] also prohibits NG3's reconventional demands.

---

[4] The *Noerr-Pennington* doctrine of immunity, named for two of the three principal U.S. Supreme Court cases in the area, *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961); *United Mine Workers of America v. Pennington*, 381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed. 2d 626 (1965), is most often asserted against antitrust claims. It has, in some states, been applied to claims that seek to assign liability on the basis of a party's exercise of his rights under the First Amendment. Louisiana's anti-SLAPP provision, La. C.C.P. art. 971, provides redress for anyone exercising his right of petition or free speech under the federal or state constitution ***concerning matters of public concern***.

NG3 argues that there was no error in the trial court's determination that ETP failed to satisfy the first step of the article 971 analysis—ETP failed to meet its burden of proving that Counts II-VI of NG3's reconventional demand "arise from" protected conduct. NG3 asserts that none of its causes of action depends upon ETP's lawsuit for any of its elements, but instead each count is based on "substantial unprotected ETP misconduct" and each count would survive an exception even had ETP never filed its own suit for declaratory judgment.

Additionally, based on NG3's pleading of extensive facts sufficiently supportive of its claims, as well as fact and expert affidavits in response to ETP's motion to strike, the trial court had an alternative ground upon which to base its denial of ETP's motion to strike at step two of the La. C.C.P. art. 971 analysis.

A trial judge's rulings on a special motion to strike filed pursuant to La. C.C.P. art. 971 and an exception of no cause of action are both reviewed by an appellate court *de novo*, as each raises a question of law. *Hatfield v. Herring*, 54,048 (La. App. 2 Cir. 8/11/21), 326 So. 3d 944, *writ denied*, 21-01377 (La. 12/07/21), 328 So. 3d 424; *Knutsen v. Prince*, 40,109 (La. App. 2 Cir. 9/21/05), 911 So. 2d 404.

Louisiana C.C.P. art. 971 provides in part:

A. (1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.

(2) In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

. . . .

    F. (1) "Act in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue" includes but is not limited to:

        (a) Any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law.

Article 971 was enacted by the legislature as a procedural device to be used in the early stages of litigation to screen out meritless claims brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. *Quinlan v. Sugar-Gold*, 53,348 (La. App. 2 Cir. 3/11/20), 293 So. 3d 722, *writ denied*, 20-00744 (La. 10/6/20), 302 So. 3d 536; *Johnson v. KTBS, Inc.*, 39,022 (La. App. 2 Cir. 11/23/04), 889 So. 2d 329, *writ denied*, 04-3192 (La. **3**/11/05), 896 So. 2d 68.

Most of the cases in which a special motion to strike pursuant to La. C.C.P. art. 971 are brought involve claims and/or allegations of slander or defamation. The underlying matter in *Shelton v. Pavon*, 17-0482 (La. 10/18/17), 236 So. 3d 1233, however, was an action by a husband against the beneficiary of his wife's life insurance policy seeking nullification of his wife's change of beneficiary from him to her personal assistant/paralegal friend. Taking issue with some of the allegations against her made by Dr. Shelton in the petition to nullify, the beneficiary, Ms. Pavon, filed an answer and reconventional demand alleging that Dr. Shelton's petition constituted defamation *per se*. In response, Dr. Shelton filed a special motion to strike pursuant to La. C.C.P. art. 971. *Shelton*, p. 2, 236 So. 3d at 1235. Ms. Pavon filed an opposition, urging that the motion to strike should be

dismissed as a matter of law because Dr. Shelton's petition to nullify did not involve a public issue and the motion to strike was not the proper procedural mechanism to dismiss her defamation claim. *Id.*

Although the trial court, after a hearing and taking the matter under advisement, granted the motion to strike, the appellate court reversed, finding that Dr. Shelton failed to meet his *prima facie* burden under La. C.C.P. art. 971 as his petition for nullity was not an exercise of his right of petition in connection with a public issue as contemplated by subsection (F)(1)(a) of art. 971. *Id.*, p. 3, 236 So. 3d at 1235-36. The Louisiana Supreme Court granted writs to resolve a split in the circuits as to the interpretation of La. C.C.P. art. 971(F)(1)(a). The Court noted that in the act that created La. C.C.P. art. 971, 1999 Acts No. 734, § 2, the legislature expressed its desire to encourage participation in matters significant to the public, which suggests that article 971 is intended to protect statements made in connection with public rather than private issues under consideration by a government body. *Id.*, pp. 11-12, 236 So. 3d at 1241.

The Supreme Court in *Shelton* noted that in *Yount v. Handshoe*, 14-919, pp. 11-12 (La. App. 5 Cir. 5/28/15), 171 So. 3d 381, 388-89, *writ denied*, 15-2302 (La. 2/19/16), 187 So. 3d 462, the Fifth Circuit extensively reviewed Louisiana jurisprudence and analyzed the types of issues that are protected under the ambit of article 971 before concluding that suits involving private disputes between private parties have generally been found to fall outside the ambit of La. C.C.P. art. 971. *Shelton*, p. 12, 236 So. 3d at 1241. The Court in *Shelton* also noted that in *Connick v. Myers*, 461 U.S. 138, 146, 103 S. Ct. 1684, 1690, 75 L. Ed. 2d 708 (1983), the United States Supreme Court described speech on matters of public concern as speech

9

"relating to any matter of political, social, or other concern of the community." *Id.*

The Court then held that La. C.C.P. art. 971(F)(1)(a) applied to any written or oral statement made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, so long as it is made "in connection with a public issue." *Id.* Specifically, in *Shelton*, the Court held that regarding the merits of the dispute before it, the Fifth Circuit correctly found that Dr. Shelton's petition to nullify a change in beneficiary to his wife's life insurance policy was a private dispute involving private parties and not a matter of public concern or significance. Thus, Dr. Shelton, who filed the special motion to strike in response to Ms. Pavon's counterclaim for defamation, failed to satisfy his initial burden of demonstrating that his petition was an act in furtherance of his right to petition "in connection with a public issue" as required by article 971(A)(1). *Id.*

As in *Shelton*, *supra*, this matter is a private dispute regarding the interpretation of Louisiana's property law involving private parties. Whether the particular issue presented to the court is a matter of public concern or significance, we find that this case does not implicate Louisiana's anti-SLAPP law. As noted above, in Louisiana, the special motion to dismiss is a procedural device to be used in the early stages of litigation to screen out meritless claims brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. In the instant case, ETP's petition for declaratory judgment sought the district court's declaration that NG3 was required to seek ETP's permission before installing a proposed pipeline across properties covered

10

by ETP's own pipeline right-of-way servitudes. Count I of NG3's reconventional demands is a request that the district court declare that ETP has no right to require NG3 to obtain ETP's permission to cross the underlying properties, and that NG3's proposed crossings do not adversely affect ETP's alleged servitude rights. Counts II-VI complain of ETP's allegedly anti-competitive conduct, not the filing of the declaratory judgment action. In fact, these counts could have been filed as an independent action, although some of the facts alleged by NG3 would necessarily be involved in both the declaratory judgment action and such a separate action. We thus affirm that part of the trial court's judgment denying ETP's motion to strike under La. C.C.P. art. 971.

### *Denial of Exception of No Cause of Action*

ETP asserts that NG3's competition claims fail because NG3 is *unable to show* that ETP has the power to exclude competition or control prices. ETP notes that NG3 has conceded that, if ETP wins its petition for declaratory judgment, NG3 (and others) can still compete by initiating expropriation proceedings or building a pipeline in another location. Additionally, NG3 has admitted that ETP cannot control prices in the market, as it is subject to "regulated rates." Both of these are fatal to NG3's claims under the Louisiana Monopolies Act, urge ETP.

ETP contends that NG3 is *unable to show market power and prove* that ETP substantially foreclosed the market or can charge supercompetitive prices (**Count III**). Likewise, NG3 has *failed to show* that ETP's land use contracts are "contracts in restraint of trade" under La. R.S. 51:122 (**Count II**). Also, ETP urges that *NG3's claims under Louisiana's Unfair Trade Practices Act ("LUTPA") and abuse of rights doctrine* (**Counts IV and V**)

11

*fail because they are based on litigation and business conduct that* NG3 "agrees *is justiciable*" and "*requires a trial*."

According to ETP, NG3's tortious conduct claim (**Count VI**) is not justiciable as it is simply a negligence claim. Even as that, ETP urges that NG3 has failed to allege critical elements—standard of care/duty and the breach thereof by ETP. Finally, ETP asserts that any of NG3's claims that could survive dismissal on state law grounds are preempted by federal law.

NG3 argues that it pleaded extensive facts to support its causes of action in its reconventional demand as well as expert affidavits in support of its claims in response to ETP's motion to strike. In **Count II**, NG3 alleged that ETP's servitudes are "contracts in restraint of trade" within the meaning of La. R.S. 51:122, which have been and are currently being used by ETP to delay, threaten, and/or block the completion of new pipelines.[5]

In **Count III**, pursuant to La. R.S. 51:123, NG3 asserted that ETP has monopolized and/or attempted to monopolize the relevant market in violation of the Louisiana Monopolies Act. Alternatively, ETP is trying to implement the anti-competitive scheme set forth in detail in NG3's reconventional demand with the specific intent to unlawfully create a monopoly in the relevant market. As a result of ETP's exclusionary conduct and the harm to competition caused by that conduct, NG3 has suffered substantial and continuing injuries. Pursuant to La. R.S. 51:137, NG3 seeks an award of treble damages, attorney fees, costs, and interest.

In **Count IV**, brought under LUTPA, NG3 averred that ETP is unfairly restraining competitors, including NG3, from constructing critical

---

[5] All of NG3's claims incorporate and reallege paragraphs 1-91 of its reconventional demand.

12

infrastructure to move natural gas from the Haynesville Shale to the Louisiana Gulf Coast by, *inter alia*, blocking NG3's proposed pipeline crossings; asserting its alleged rights under pre-existing servitudes, "which suffer from defects . . . as bases to block NG3's planned crossings; and bringing "baseless litigation" against NG3 to "delay and kill" NG3's natural gas gathering and carbon capture project. According to NG3's claim, the unfair methods of competition engaged in by ETP offend established public policy and will harm not just NG3 and other pipeline companies similarly situated, but downstream users and consumers whose accessibility will suffer. NG3 described ETP's anti-competitive conduct as "a coordinated effort between Energy Transfer's representatives to ensure [it] unfairly dominates the market for natural gas from northwestern Louisiana." NG3 sought attorney fees, costs, and interests under La. R.S. 51:1409(A) and an award of treble damages under La. R.S. 51:1402(7).

In **Count V**, NG3's abuse of rights claim, NG3 alleged that ETP has abused its "preexisting [pipeline right of use servitude] rights" to use the landowners' property to harm NG3 and prohibit the exercise of its own valid servitude rights to construct "necessary and critical natural gas infrastructure." NG3 further averred that there was no law requiring it to get ETP's permission before NG3 constructed its natural gas gathering system; to the contrary, Louisiana's law treats rights of use as non-exclusive. NG3 alleged that ETP's litigation against NG3, its competitor, to treat ETP's "purported" rights as exclusive (by requiring ETP's permission to cross), despite the lack of any "exclusive" language in the servitude agreements referenced to in ETP's petition, is the "gross abuse." NG3 also asserted that the ETP servitude agreements do not give it rights to construct additional

13

infrastructure, such as the planned line loop of Gulf Run that is "improperly driving Energy Transfer's exercise of its alleged rights." ETP cannot use its alleged "rights" in the properties over which it has servitudes to "stifle competition, block new infrastructure projects, raise consumer costs and fees, and effectively usurp from landowners their authority and right to control access to and the use of their properties." Alleged harm caused by ETP's abuse of rights includes: "preventing NG3 from exercising its own valid rights of use in the underlying properties; unduly prolonging and delaying its natural gas gathering and carbon capture project; and causing NG3 to suffer significant damages[.]"

In **Count VI**, NG3 alleged a claim under La. C.C. art. 2315 that ETP's intentional, willful, and unreasonable actions in, *inter alia*: interference with the construction of NG3's natural gas gathering and carbon capturing project and the exercise of its servitude rights; refusal to deal with others, including NG3, in a fair, reasonable, non-prejudicial and non-discriminatory manner; improper objection to NG3's proposed pipeline crossings; exercise of ETP's purported contractual rights and duties in an unreasonable, malicious, and bad faith manner; and interference with NG3's relationships with businesses and landowners to the prejudice of NG3, caused significant damage to NG3 and was a breach of ETP's duty to act as a "reasonably prudent person under the circumstances, as informed by settled industry custom and practice, the law. . . , the public policies of the State of Louisiana, principles of fault and moral, social, and economic considerations."

The peremptory exception of no cause of action tests the legal sufficiency of the petition by determining whether the plaintiff is afforded a

14

remedy in law based on the facts alleged in the pleading. *Kendrick v. Estate of Barre*, 21-00993 (La. 3/25/22), 339 So. 3d 615; *Industrial Companies, Inc. v. Durbin*, 02-0665 (La. 1/28/03), 837 So. 2d 1207; *Whitlock v. Fifth Louisiana District Levee Board*, 49,667 (La. App. 2 Cir. 4/15/15), 164 So. 3d 310; *Knutsen*, *supra*. The exception is triable on the face of the petition, and the well-pleaded facts in the petition must be accepted as true. *Id.*

Because the exception of no cause of action raises a question of law based solely on the sufficiency of the petition, an exception of no cause of action should be granted only when it appears the petitioner cannot prove any set of facts which would entitle him to relief. *Industrial Companies, Inc.*, *supra*; *Drayton v. Shelbon*, 54,839 (La. App. 2 Cir. 3/1/23), 357 So. 3d 962. Whether the plaintiff can successfully prove that the defendant is liable under the applicable laws in the case is a matter of proof that goes to the merits of the plaintiff's claims. *State ex rel. Tureau v. BEPCO, L.P.*, 21-0856 (La. 10/21/22), 351 So. 3d 297; *Drayton*, *supra*. The merits of a claim are to be determined after findings of fact, upon a motion for summary judgment, or a trial on the merits, and the plaintiff's ability to prevail on the merits, or whether the defendant has a valid defense are not appropriate considerations on an exception for no cause of action. *Id.*

ETP's focus on NG3's ability (or lack thereof) to establish certain aspects of the claims set forth in its reconventional demand misses the mark. Whether NG3 can prove or establish the requisite elements of one or more of the above claims is not at issue on an exception for no cause of action. Instead, as set forth above, the only issue for the court is whether NG3 has

15

alleged facts which, *if* proven at trial, would entitle it to relief.[6] We find that NG3 has done so, and therefore that part of the judgment of the trial court denying ETP's exception of no cause of action will be affirmed.

## CONCLUSION

For the reasons set forth above, the trial court's judgment is affirmed. Costs of this appeal are assessed against plaintiffs, Energy Transfer LP, ETC Texas Pipeline, LTD, Gulf Run Transmission, LLC, Enable Midstream Partners, LP, and ETC Tiger Pipeline, LLC.

**AFFIRMED.**

---

[6] As for ETP's argument regarding federal preemption, NG3 specifically asserts in Paragraph 119 of its Answer and Reconventional Demand, "NG3 asserts only causes of action accorded to it under the Louisiana Constitution and laws of the State of Louisiana. **NG3 has not pled any claim or cause of action arising under federal law and asserts no such claims herein. To the extent any state law claims are preempted by federal law (either expressly or impliedly), such claims are not alleged herein.**"